Number 4-17-0-2-2-7 for the appellant is Barbara Gobin, is that pronounced correctly? Yes. Lucky guess. And for our appellee is Thomas Doedeke, pronounced correctly? Yes. Okay. I want to mention, counsel, that we ask lawyers to be ready a half hour early. And one of the reasons is we might be ready a half hour early, depending upon how our cases have gone. And here we are. We are ready a half hour early, and we can get started. So I want to thank you both for being here and gives us that opportunity. So without further ado, Ms. Gobin, you may proceed. Thank you. May it please the court, counsel? Counsel. My name is Barbara Gobin, and I represent the respondent, Bonnie S., and her appeal of both an involuntary mental health order and a commitment, involuntary admission and involuntary treatment mental health orders. There's four issues I'm going to argue. There's two with regarding the involuntary admission. One is the untimely filing of the second certificate and the failure to testify of how long she would need to be committed. With regard to the medication issue, the two issues are the state failed to prove that they gave her written information about alternatives to treatment, and the court ordered the treatment providers without any evidence of who the treatment providers would be with regard to the involuntary medication. With regard to the first issue, this is kind of not your ordinary commitment case with regard to the second certificate. As you all know, to involuntarily commit someone, you need the petition, the first certificate, and the second certificate. The petition and first certificate need to be filed within 24 hours. The second certificate needs to be filed promptly. Here, the second certificate was completed on March 3rd, but it wasn't filed until March the 13th, the date of the court hearing. So we argue that this does not comply with the timeframes of the code in that that's not a prompt filing of that second certificate. If we agree with you, what does that mean? That means it's reversal because of strict compliance with the procedural timeframes. Well, what about the idea about the fact that it's directory versus mandatory since the statute itself doesn't provide for that, does it? Well, it's an interesting line that the Illinois Supreme Court recently stayed with Rita P. and James W. Directory is with regards to governmental officials, and this has been filed by – it's a private official. It's the hospital who's filing this paperwork. This is the government. We're talking about the government taking action. It's only the government that can keep someone involuntarily committed. Well, I would argue that it's the hospital who files the second cert. It's not the state's attorney. It's the private party who's required to file that second cert. So the analysis from the Supreme Court on what's directory and what's mandatory doesn't apply? Right, because it's only for government officials. Rita P. was with regarding a judge writing an order. James W. was the setting of a hearing. So the court said, by the way, none of this applies if it's not a government official? It's very strong in both. It says government officials, and never said it applied to non-government officials. And this is just a non-governmental matter, just as if it's any other concern of private people? Well, I mean, it's a deprivation of liberty, of course. But the filing – Is it only the government capable of doing that? Right, with the court order. But it's the private parties, the facility director, who's a private, non-governmental person, is supposed to file, is filing that second cert. What does promptly mean? That's the other question. Well, yeah, I use the Black's Law definition. I think my sense of it is, is there's two ways to look at this, is that after filing the petition, the court hearing is supposed to be held within five days. So you could say, as a practical concern, promptly is within five days of the original petition, because it's supposed to be at least by the date of the first hearing date it should be filed. A second definition, you kind of see it when it's not in compliance. This wasn't, because it was done at the date of the hearing. So I know that it was part of – the problem is the legislature was not precise in what's promptly. But isn't that – how do I put it? It's hard to view that as inadvertent, isn't it, given the precision with which the legislature otherwise in this act specifies what must be done and when and how? You use the term promptly as opposed to within X days or – X hours, yeah. Yeah, I mean, doesn't that suggest that the legislature is aware that this is an area where precision might not be required, it's adequate to use purgatory language like promptly as opposed to at the end of the month or something like that? Well, I think it's a concession because it's psychiatrists who have to fill out the second cert who are busy professionals. And you have a good point, but I still don't think it's within the sphere of the law that promptly is at the date of the hearing. And it was actually over almost two weeks after the examination. Well, if we agreed with you, that means we'd be amending the statute to mean promptly, but before the date of the hearing. The statute doesn't say that, does it? To be honest, no, it doesn't. But common sense is that I would say it has to be – it would seem like to adequately prepare it should be before the hearing. Well, it also – isn't there – is there any prejudice which was shown in this case? Or would it arise from that being filed sooner? I think there was a little bit. The public defender tried his best here. He argued that the psychiatrist didn't sign it within 24 hours because he wasn't sure because there was no law library there. And this hearing was conducted at the hospital. So he got the certificate at – apparently it was filed that day, so it was at the hospital hearing room. So he had no time to research this issue. Of course, better practice would have been asked for. Research what issue? What was the issue he brought to research? Well, whether the timeliness and whether it was valid and why was there a delay of several days. And also, the second cert sometimes contains – this one was pretty detailed, but sometimes they aren't detailed enough. And it's a way to go against the veracity of the petition. But I think the public defender here tried. He argued the issue of the – that it wasn't signed right away, more than 24 hours, because he thought it needed to be signed 24 hours. But he had no law library there to research this issue. And I think that was how – there was prejudice. And also, you know, a directoratory versus mandatory reading is what was the purpose of the statute putting it promptly? I think the purpose of it was to have the hospital file it as soon as possible, not to delay until the date of the hearing. And that's another cornerstone for a mandatory reading. Also, counsel raised the issue of defenses of waiver. And basically, even though there is strong case law that 610 and 611 violations require strict compliance in plain error, there have been exceptions when there's substantial compliance or there's a lack of prejudice. Here, there wasn't substantial compliance because it wasn't done beforehand. So it's like when they didn't receive the notice, but they received it, let's say, 10 hours later, but counsel received notice of this petition. The second issue is the timeframes. And basically, as part of a commitment, the hospital is required to file a report under 53810. And part of the report is to say the timeframes of the treatment plan. Here, the treatment plan that was filed did not say the timeframes for her commitment or when, how long they planned to have her hospitalized. And basically, there's been exceptions to absence of a treatment plan when the psychiatrist testifies to these points. Well, didn't the psychiatrist here testify to that, such as the respondent needs a higher level of care and long-term treatment for a psychiatric problem? Well, I would argue, I know I'm slicing the straw here, but all my clients need long-term treatment. Is it long-term? Is it 30 days? Is it 90 days? Unfortunately, our clients have chronic illness. It's not going to be cured. There was no decision. The 90-day commitment is the maximum of the statute, isn't it? Well, then they can get another 90-day extension and another 180 days. No, until you go for another 90, up until that request is made, based upon a need, hopefully, that someone could justify to during the first 90-day period, we're talking about 90 days. So the testimony is needs a higher level of care and a long-term treatment for a psychiatric problem. Doesn't that bespeak of 90 days? It could be less. Their normal priority was 5 to 7. They wanted to send her to McFarland for longer. I've been doing this practice for over 12 years, and normally, they always say how long it is. They just don't assume it's 90 days. You know, one of the problems with this, as distinguished jurors once observed, this isn't real law, it's mental health law. Well, it's real law, and it ought to be applied as such. And things would be lots better if everyone complied with all these details here, but one of the problems is there was this lawyer representing the respondent, and the lawyer said, well, what do you mean by that, Dr. Choudhury? How long are we talking, Buffen said. Yet, you're asking us to reverse based on the idea that this testimony was inadequate when it could have been clarified or made more explicit if anyone had asked. So I suppose the question is, given it would be nice if we had everyone do this a little bit better, but given what we have here, why should we conclude this is reversible error, which is what you're asking. It actually does provide guidance to the lower courts. They are doing a much better job than they used to be on these issues. Well, we've nagged them in the past, as you know, this court in particular. Right. And so they are clarifying on these issues. You know, I think it does really help. Actually, this is the one area of the law where, even though technically it's new, it really does help the lower courts on knowing what to ask. You know, these attorneys are busy. We do try to train them. But it does, like on this one, I don't think the hospital realized that they had to put time frames in their treatment plan. And I think this does, these rulings and decisions really do help in the lower levels in providing more precision and better and more detailed hearings. And another issue is with regard to the administration of involuntary medication. I know this court did a detailed ruling in Dorothy J.N. and basically the state failed to provide, prove that they provided written information to her about alternative forms of treatment, which is very clear under the precedent. And basically, counsel on the other side said, well, maybe alternatives weren't a viable form of treatment. But in all medication proceedings, the psychiatrist would say that the psychotropic meds would be the most viable because that's what they're asking for. And also, just to let you know, on this written information that the clients are receiving about alternative forms, the hospitals are kind of sneakily putting information why the alternatives aren't viable, so why counseling alone won't help your diagnosis, why group therapy alone won't help your diagnosis. So, you know, the viability should not be considered an issue with, regarding compliance with that element of the statute.  What? Why is that sneaky? Oh, not sneaky, but it's kind of arguing their point, you know? Right. Yeah, yeah. But if one would assume that they have some degree of faith in the psychiatrist that they have on staff or have been called in, and the psychiatrist is essentially telling the hospital as well as the court, this is the treatment plan that I recommend and it's the only one that will work. So. I mean, I didn't mean to, but it actually clarifies for the respondent, and actually they have more time to read this information than you and me because they're just sitting there in the hospital. And it explains, actually explains in clear language two to three pages why that form of treatment won't work. So it's a very, it's actually a very good development within the mental health law that my clients benefit from, so. And perhaps I was too glib with the term sneaky, I apologize. The last part is kind of interesting. There's really no case law on whether the doctor has to testify as to who needs to administer the medication. But I wish I would consider this issue de minimis, like, oh, they didn't testify who it is, the order says, you know, would match the petition. But here, the petition, the treatment plan, and the order had three different groups of doctors who are administering the medication. And the hearing presented no evidence as to who would administer it. Are they administering the medication or are they administering the treatment? I.e., do the doctors actually come around with the pills for the shot? I think not. They write the scripts. They write the scripts. The nurses actually are giving the medication. Right. So it really is authorization for the doctor to write the script. And then we put language saying, and they're licensed employees to administer. And in this case, it was kind of interesting because Dr. C testified, but it was actually a different doctor who was authorized and not the testifying doctor. And then the treatment plan didn't include McFarland doctors, and the order included McFarland doctors, but there's no evidence that she actually was McFarland with the placement. So I wish I would consider this de minimis, but since it was so glaring and so, you know, I mean it's an obvious fact that before you can enter an order for something, there needs to be evidence for it. And there was no evidence presented, or the petition wasn't asked to be judicial noticed. No evidence presented for what? On who would be the treatment providers. Right. They decided that there's going to be as treatment as necessary. What uncertainty was there about this? Well, the uncertainty is who is going to provide the treatment. Meaning who's going to provide the supervision for the treatment. Right, right. Who are the psychiatrists? And this group of doctors is not the treatment team, they just happen to be varying doctors at different times or different stages of the process. Right. So what you're really asking is, designate a doctor, or tell us who you think it is, that's going to be supervising the treatment that this patient receives. Right. And it doesn't have to be one. Do some places do that? Oh, yeah, they always do. It's like, they'll name like the four or five doctors on rotation in the hospital who's going to administer and supervise the medication. Sometimes if I have a client who's going to go, oh, I apologize, to a nursing home, we have the doctor who covers the nursing home or the outpatient area, so then it can continue in that area too. So here we kind of can infer that the psychiatrists who are involved in this would be supervising the treatment, or can we not? Because some of the doctors were at Broman and others would be at McFarland, if that's where she went. Right, and the Broman doctor who testified is not the one listed in the order as authorized to administer the treatment. He probably isn't because he's not going to drive to Springfield to do it. No, no, but it was a different Broman doctor that they authorized. It was very unusual in this. I've never seen it this. I don't mean to say unusual. It's very sloppy. Yeah. True? Yeah. You know, one of the things troubling here is to the extent this is a real concern, how about saying counsel or respondent? Private concern, who's going to be administering this? And the court should provide for that. I suppose the context is if this is a real concern, would it be addressed? And if it's not a real concern, what is the harm or prejudice? Well, I think the prejudice is the court has a parental duty to ensure who is going to administer this. And this was so sloppy, you know, it wasn't even the testifying doctor who's going to administer this. I never saw it this way, to be honest. So those are the four main issues in this. And we respectfully request your consideration on this. Any further questions? Thank you, counsel. Mr. Dobeke? May it please the court, counsel? As noted, respondent raised five issues on appeal. The last one was that an exception to the loop effect applied and the state conceded. Say that again, the exception was what? The fifth issue was whether or not an exception to the mootness doctrine applied and the state conceded that issue. In oral argument, absent questions by the court, I would like to focus on issue number one. As noted in issue number one, respondent intends that the involuntary commitment order should be reversed in that the second certificate was not quotation marks promptly filed. In its brief, the state argued that the mandatory directory principle of statutory construction applied to this, to the statutory provision at issue. And on appeal or in the reply brief, respondent contends that the mandatory principle, directory principle of statutory construction, does not apply in that the person filing the second certificate, i.e., the facility director, was not a quotation marks government official. A summary of the state's argument on this point would be essentially as follows. This is a state proceeding. It is brought in the name of the state. Consequently, the facility director in filing the second certificate is acting on behalf of the state. Since the facility director is acting on behalf of the state, he is a state official. Well, private actors can't involuntarily detain people. I'm sorry? Private actors can't involuntarily detain people. Private actors cannot involuntarily detain people. By statute, I believe, well, it's 3-101 makes or 3- excuse me. Yes, it's 3-101. I don't have my glasses on, so I can't. But provides explicitly that an involuntary commitment proceeding is a state proceeding, that the state shall be represented by the state's attorneys, and that the state's attorneys are responsible for the proper preparation of the petition, the reports, and the orders. So this is clearly a state proceeding. Further, this court has stated, and I'll quote, this is from Ray DeMere, the code provides a comprehensive set of requirements to be followed by the state to commit an individual by certificate. So I think given these factors, the facility director is clearly acting on behalf of the state, and as such is a state official. Also, as was brought out in oral argument, the statute uses the term prompt or promptly. Promptly, as was discussed, is not a word of precision. Presumably, if the General Assembly had meant this to be a mandatory statute, it would not have used a vague term like promptly. Respondent intends that this principle of statutory construction should not apply because the code, mental health code, concerns liberty interests. However, the Illinois Supreme Court has already determined in two cases, read it P. James W., that this principle of statutory construction applies to the mental health code, and the state is suggesting that it be applied to a specific provision. Finally, on this issue, Respondent contends in her reply brief that the, even if the mandatory directory principle of statutory construction applies, the statute should be construed as being mandatory. The Respondent states that if the statutory provision is interpreted as directory, petitioners, and I'll quote, will then file these second inpatient certificates of hearing, effectively sandbagging the other with possible directive defective certificates. But I think this is a simple one-page certificate where they chuck off boxes. So I would suggest there's no support for that contention that this would be a major issue. That concludes my oral argument. I have a question about the last argument counsel raised with regard to the people authorized. Yes. If I understood correctly, the order set forth who was authorized to administer the psychotropic medication, but the claim of the Respondent is that there was no specific evidence presented to the court identifying these people or who should be so authorized. What about that? Well, first of all, as Respondent acknowledges in her brief, there is no statutory requirement that such evidence be presented. Secondly, the case law which Respondent cites is based upon a different statutory provision than the statutory provision that provides for the filing of both medications and of the list of the persons who are supposed to or who will administer medication. So I would suggest under either case law or under statute, there is no basis for Respondent's argument. Well, the people who were designated in accordance with A-5-6 to authorize to administer the treatment, where did their names and identities come from? These were provided presumably by what they would have gone through the state. I'm not sure how that list was derived, but I mean it would have come from the state. So it was presented to the court at some point and the court entered it? And the court did enter it, yes. If I go to the hospital, I know who my treating physician is. And if in aftercare I have a question, that's who I talk to. Here, how would this Respondent or the Respondent's family know who to direct their questions to? Well, if they don't know who's administered. They know the treatment's going to occur at a particular place. They know that she may have contact with more than one psychiatrist or physician. Yes. But somebody is supposed to be in charge practically. I understand there's no case law. Yes. This provision or what we're dealing with is limited to the specific involuntary admittance proceeding. Right. There are, of course, would be other contacts with the family as far as who would be doing the actual administration. At least that's what I'm assuming here. Well, counsel suggests that in other locations, this information is given. I can't answer that question. You wouldn't necessarily know that. That's sort of like you assuming that there are other contact people that are going to talk to the family. Yes. And this person who practices in those other areas, I would assume, is saying that we don't see this kind of order very often. So, again, I can't, unfortunately, I cannot respond to that question. Thank you. Anything else, Mr. Deputy? No. Thank you, counsel. Ms. Goldman, any rebuttal, ma'am? Just to clarify, the petitions when they're filed by the court, it's by private parties. It's not by the state. So, there's even a thing in the petition saying I have no conflicting legal interest. So, I think it would be a stretch to say that the petitioners who are required to file, or the hospital who's required to file a second cert, is a government entity, a government official, with regarding to the mandatory versus direct petition. But this is government action. Well, it's the government action is the order, but a private party can file the petition for involuntary admission. And then what? A private party can file a petition in the juvenile court act as well, and then the state gets involved and can dismiss it immediately. Right. But they're not, the timeframes of the petition have to be complied by the petitioner, not the state. Well, it's not an argument that is likely to prevail that the involuntary detention of somebody is a private, not governmental action. This is government. And the rules governing what the government does, or how someone is involuntarily detained, that's the government. And I don't, just like in a criminal case, there might be a citizen who says, hey, this guy did a bad thing to me. Okay. But it's the government that has to take action to put that guy in jail. Right. Well, so. Well, go ahead. And the only thing is also that basically it was in the patient's interest to have the certificate filed promptly so that counsel can research and determine the validity of the second certificate, whether it was interviewed within the 24 hours, whether the examiner is a proper qualified examiner, whether they did it by telephone. Lately they've been doing it by videoconference, which is not allowed. So there are issues that come up with the second certificate. And a directory reading of this would hamper the patient's liberty, interest, and effective representation on this. The issue promptly is to protect the patient and their rights on this. If the legislature didn't want you to file that anytime, they wouldn't have had that edited promptly. Though it would have been better if they had. I think they said within, fill in the blank. Yeah. As they did almost everywhere else in the code. Yeah. It would make our lives easier sometimes if the legislature was more precise. But I think the spirit of the term promptly does not mean it's at the day of the hearing. Thank you. Okay. Thank you, counsel. Thank you.